1  Aaron K. Block (*Pro Hac Vice Forthcoming*)
   Georgia Bar No. 508192
2  Max Marks (*Pro Hac Vice Forthcoming*)
   Georgia Bar No. 477397
3  THE BLOCK FIRM, LLC
   309 E. Paces Ferry Road, Suite 400
4  Atlanta, Georgia 30305
   Tel: (404) 997-8419
5  aaron@blockfirmllc.com
   max.marks@blockfirmllc.com
6
   Candice L. Fields (SBN 172174)
7  CANDICE FIELDS LAW, PC
   400 Capitol Mall, Suite 1620
8  Sacramento, California 95814
   916-414-8050
9  cfields@candicefieldslaw.com

10  *Counsel for Plaintiff Cassandra Edwards*

11

12  **UNITED STATES DISTRICT COURT**

13  **NORTHERN DISTRICT OF CALIFORNIA**

14  **SAN JOSE DIVISION**

15

| | |
|---|---|
| 16 **CASSANDRA EDWARDS,** | **Case No.:** _____ |
| 17     **Plaintiff, on behalf of herself and all others similarly** | **CLASS ACTION COMPLAINT** |
| 18     **situated,** | |
| 19 **vs.** | |
| 20 **APPLE INC. AND APPLECARE SERVICE** | |
| 21 **COMPANY, INC.,** | |
| 22     **Defendants.** | |

23  **Introduction**

24      1.    When someone trades in or returns an Apple device, Apple is supposed to stop

25  charging AppleCare+ subscription fees for that device. That is what the AppleCare+ agreements

26  require and what consumers expect. Having traded in an Apple device, consumers have no need

27  to pay for protection or support on that device. Instead of honoring the agreement and

consumers' expectations, Apple kept charging Plaintiff and members of the Class she seeks to represent for AppleCare+ subscriptions tied to devices Apple knew they no longer owned. In Plaintiff's case, Apple kept collecting monthly fees for years after the trade-in, amounting to hundreds of dollars. At the same time, Apple also charged Plaintiff and members of the Class new monthly AppleCare+ subscription fees for their new devices.

2.     Apple knows when a device covered by an AppleCare+ contract has been traded in or returned. Apple ties AppleCare+ to a particular device by serial number, it charges fees by device, and services are available under the contract only in connection with that device. When consumers like Plaintiff sign up for a monthly AppleCare+ subscription at purchase, Apple automatically enrolls their specific device in AppleCare+ and begins charging fees as soon as it ships. Apple also tracks trade-ins and returns by serial number. It would be just as easy for Apple to automatically turn off AppleCare+ fees when a consumer trades in or returns a device as it is for Apple to automatically start the fees on purchase. But it would be far less profitable.

3.     It is wrong for Apple to charge consumers for AppleCare+ tied to devices that Apple knows they no longer own. Apple's own trade-in terms require consumers to relinquish ownership of the covered devices forever. AppleCare+ is an extended warranty and service contract that is worthless to the consumer without the covered device. Charging for AppleCare+ after a trade-in is pure profit for Apple because it cannot incur any replacement, repair, or support-related costs for a device that is out of circulation. For Apple, it's money for nothing. For consumers, it's one more obstacle to making ends meet. For both sides, these charges add up.

4.     As set out below, Apple breached its contracts with consumers, violated applicable consumer protection laws, and unjustly enriched itself at its customers' expense. On behalf of herself and the Class, Plaintiff seeks to recover all damages caused by Apple's wrongful conduct, injunctive relief requiring Apple to stop charging consumers for AppleCare+ on devices that have been traded in or returned, punitive damages, and attorneys' fees.

## Jurisdiction and Venue

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because at least one class member is of diverse citizenship from Defendant, there are more than 100 class members, and upon information and belief, the aggregate amount in controversy exceeds $5,000,000.

6.     This Court has personal jurisdiction over Defendant Apple, Inc. because it is a California corporation, its principal place of business is in California, and it has conducted and continues to conduct business in California.

7.     This Court has personal jurisdiction over Defendant AppleCare Service Company, including its "dba" entity Apple CSC, because its principal place of business is in California, and it has conducted and continues to conduct business in the State of California.

8.     Venue is proper in this District under 28 U.S.C. § 1391 because the events that gave rise to the claims occurred in substantial part in this District.

9.     Venue is proper in this Court with respect to California's Consumer Legal Remedies Act ("CLRA") because Defendants' principal place of business is within a county within this District. The affidavit required by Cal. Civ. Code § 1780(d) is attached as an exhibit to this Complaint.

10.     Upon information and belief, Defendants substantially developed and determined the language and terms used in the AppleCare+ contracts in California.

11.     Upon information and belief, all or substantially all marketing decisions related to AppleCare+ were made in California.

12.     Upon information and belief, all or substantially all policies and procedures related to AppleCare+ were developed in California, including all policies and procedures related to trade-ins, returns, and cancellation.

## Parties and Standing

13.     Plaintiff Cassandra Edwards is a resident of Florida. On October 16, 2020, Ms. Edwards ordered an iPhone 12 Pro with the serial number F17DH22G0D88 from Apple. When

she purchased the device, she also ordered AppleCare+, and Apple notified her that a subscription to "AppleCare+ with Theft and Loss for iPhone 12 Pro" was "[a]utomatically registered with your Apple hardware" at a cost of $13.49/mo, which would begin when Apple shipped the device. Every month thereafter, Plaintiff received a "Receipt & Renewal Notice" from Apple for AppleCare+ with charges of $14.19 (the $13.49 fee plus $0.70 tax) that were specifically tied to Ms. Edwards' device with serial number F17DH22G0D88. On November 26, 2021, Ms. Edwards started the trade-in process directly with Apple through Apple's official trade-in program. On January 8, 2022, Ms. Edwards completed the trade-in process, and Apple acknowledged that she had traded in her device with the serial number F17DH22G0D88. Apple also informed Ms. Edwards that "[a]t this point, if you decide to return your new Apple product, we will not be able to return your trade-in device to you." As part of this trade-in transaction, Apple sold Ms. Edwards a new phone with a new serial number, it sold and automatically enrolled her in an AppleCare+ subscription connected to that new device, and it begin charging her a new monthly subscription fee for AppleCare+ for the new device. At the same time, Apple continued to charge Ms. Edwards—and Ms. Edwards continued to unwittingly pay—for the AppleCare+ subscription tied to device F17DH22G0D88 every month from February 2022 through July 2024, when Ms. Edwards realized that these charges were for her old phone and formally complained to Apple and sought refunds. Apple provided certain refunds after multiple levels of review but did not provide any compensation for the lost time value of money.

14.     Apple, Inc. is a California corporation with its principal place of business located at One Apple Park Way, Cupertino, California, 95014.

15.     AppleCare Service Company, Inc., an Arizona corporation, is a subsidiary of Apple with its principal place of business located at One Apple Park Way, Cupertino, California, 95014. AppleCare Service Company does business as Apple CSC Inc. in the state of Texas.

16.     As explained further below, Defendants are both named in the AppleCare+ Terms and Conditions and each have defined responsibilities that relate directly to the claims of Plaintiff and the Class she seeks to represent.

## Factual Allegations

### *Background*

17.    Apple is one of the most sophisticated consumer product companies in the world. Apple designs, manufactures, and markets mobile communication and media devices, personal computers, and portable digital music players, and it sells a variety of related software, services, accessories, networking solutions, and third-party digital content and applications.

18.    Apple's flagship product, the iPhone, is the most popular smartphone brand in the United States, with an estimated market share around 50%. Apple also sells a variety of other popular devices, such as the iPad tablet and Mac computers.

19.    Apple has a loyal customer following for its devices, and it markets and sells a variety of services to consumers who use its devices and operating systems. Over time, Apple has expanded the interconnected ecosystem of devices and services that it offers to its customers.

20.    Among consumer product companies, Apple has virtually unparalleled knowledge of who its customers are, which Apple devices and products they own and use, and how much money Apple is collecting from those customers on a real-time basis.

21.    One of the services that Apple sells to its customers is AppleCare+. According to Apple, "[m]ost Apple hardware comes with a one-year limited warranty and up to 90 days of complimentary technical support."[1] Apple encourages consumers who want to "extend your coverage further" to "purchase AppleCare+."[2] "Both AppleCare+ and AppleCare+ with Theft and Loss extend that coverage and give you additional features such as 24/7 priority tech support and accidental damage protection."[3]

22.    Apple emphasizes to consumers that one of the benefits of AppleCare+ is that Apple provides "a truly integrated system" because "Apple designs iPhone, iOS, and many

---

[1] https://www.apple.com/support/products/ (last accessed August 14, 2024).
[2] *Id.*
[3] https://www.apple.com/support/products/iphone/ (last accessed August 14, 2024).

applications."[4] This integrated approach has been a great success for Apple; it is currently the largest company in the world by market capitalization with such a large stockpile of cash on hand that the investing press views it as a "problem."[5]

### *AppleCare+ Terms and Conditions*

23.     Consumers' purchases of AppleCare+ are subject to Terms and Conditions that Apple publishes on its website.[6] Since at least July 15, 2020, all devices for which Apple offers AppleCare+ have been covered by a single set of Terms and Conditions, which Apple has updated over the years.[7] Apple's Terms and Conditions define the AppleCare+ contract as "the Plan."

24.     Throughout this period, Apple's Terms and Conditions have provided that the Plan applies only to "Covered Equipment." In turn, Apple defines "Covered Equipment" as the device "listed on your Plan Confirmation"—the "Covered Device"—plus certain defined accessories and, at times, connectivity devices associated with the Covered Device.

25.     Apple assigns each device it sells a serial number, and each purchase of AppleCare+ is tied to the device's serial number. In other words, each "Covered Device" has its own serial number, and Apple tracks which specific Apple devices in circulation are "Covered Devices" under an AppleCare+ contract by using that number.

26.     Over time, Apple has offered AppleCare+ contracts of different lengths,

---

[4] *Id.*
[5] *See, e.g.*, https://www.morningstar.com/markets/what-apples-cash-problem-means-its-stock-investors (May 10, 2023: "Apple AAPL has a problem that most of us would love: It has too much cash.") (last accessed August 14, 2024); https://www.fool.com/investing/2024/05/05/apple-has-a-problem-and-investors-should-love-it/ (May 5, 2024: "Some problems are good ones to have. That's the story with Apple. The iPhone maker has too much cash on its hands. As of March 30, 2024, Apple's cash, cash equivalents, and marketable securities totaled $162.3 billion.") (last accessed August 14, 2024).
[6] https://www.apple.com/legal/sales-support/applecare/applecareplus/us/ (last accessed August 14, 2024).
[7] *See, e.g.*, https://www.apple.com/legal/sales-support/applecare/applecareplus/071520_applecareplus_us.pdf (Terms and Conditions effective July 15, 2020, for Apple Watch, HomePod, iPad, iPhone, iPod, and Headphones) (last accessed August 14, 2024); https://www.apple.com/legal/sales-support/applecare/applecareplus/2406/240618_applecareplus_us.pdf (Terms and Conditions effective June 20, 2024, for Apple TV, Apple Watch, Headphones, HomePod, iPad, iPhone, and iPod) (last accessed August 14, 2024).

sometimes limited by device, including monthly subscriptions, annual subscriptions, and fixed-term plans. At all relevant times, the contract has set a "Plan Term" for monthly subscriptions of one month that "will automatically renew each month unless cancelled as set forth in the 'Cancellation' Section."[8] At all relevant times, cancelling a fixed-term or annual plan early entitled consumers under such plans to a prorated refund tied to the unused time under the plan, sometimes minus certain defined fees. In other words, immediately cancelling an AppleCare+ subscription when a device is returned or traded in would always benefit the consumer regardless of their plan type.

27. Regardless of the terms of the Cancellation provision, consumers received no benefit from an AppleCare+ plan from the moment they traded in or returned the associated Covered Devices forward. When Apple knew that consumers no longer owned a Covered Device, Apple could not keep charging them under an associated AppleCare+ contract in good faith because Apple knew that the consumer would not and could not receive any consideration in exchange for their payments. Thus, Apple was obligated by its duty of good faith and fair dealing to cancel AppleCare+ contracts upon trade-ins and returns. As set out below, the Cancellation provision of the AppleCare+ contract also expressly required Apple to automatically cancel AppleCare+ contracts with certain trade-ins and returns starting in 2021.

28. The terms of the "Cancellation" section have changed multiple times over the past four years. The Terms and Conditions effective four years ago did not refer to trade-ins, and they purported to require consumers who wished to cancel a Plan purchased from Apple to "send[] written notice with your Plan Agreement Number" and also enclose "a copy of the Plan's original proof of purchase with your notice."[9]

29. On October 13, 2020, Apple updated the Terms and Conditions to allow

---

[8] https://www.apple.com/legal/sales-support/applecare/applecareplus/071520_applecareplus_us.pdf
[9] https://www.apple.com/legal/sales-support/applecare/applecareplus/071520_applecareplus_us.pdf at § 9.

consumers to cancel an AppleCare+ subscription either by calling or writing Apple.[10] Also in this update, Apple provided that "[i]f you cancel your Plan in connection with the return of your Covered Device within the eligible fourteen (14)-day return window, you . . . will receive a full refund of the first Monthly Plan payment you have made."[11] But even with an almost immediate return, Apple purported to require that "[t]o cancel, you must call Apple as instructed above."[12]

30. On April 20, 2021, Apple once again updated the Terms and Conditions regarding Cancellation, this time removing the purported requirement that consumers call Apple to cancel in addition to returning a Covered Device. Specifically, the updated language provided: "Regardless of your Plan type, to cancel this Plan with the return of your Covered Device, go to the original sales channel of your Covered Device purchase (whether a Reseller or Apple). You . . . will receive a full Plan refund."[13] In other words, Apple expressly promised that, if consumers went through proper channels for returns, cancellation would be automatic.

31. On September 14, 2021, Apple again updated the Terms and Conditions regarding Cancellation, this time adding a subsection that expressly addressed trade-ins. That provision stated: "For Monthly Plans, if you trade-in your Covered Equipment to Apple or an Apple Authorized Reseller as part of an Apple authorized trade-in program, that trade-in will be deemed an expression of your intent to cancel your Monthly Plan and it will be cancelled consistent with clause 9.1(b)(i)."

32. While Apple has made various other changes to the Cancellation provision, the Plan has included a substantially similar clause governing trade-ins to the present, with the current version reading as follows: "For Monthly and Annual Plans, if you trade-in your Covered Equipment to Apple or an Apple Authorized Reseller as part of an Apple authorized trade-in

---

[10] https://www.apple.com/legal/sales-support/applecare/applecareplus/1020/101320_applecareplus_us.pdf § 9.
[11] https://www.apple.com/legal/sales-support/applecare/applecareplus/1020/101320_applecareplus_us.pdf § 9.
[12] *Id.*
[13] https://www.apple.com/legal/sales-support/applecare/applecareplus/0421/042021_applecareplus_us.pdf § 9.

program, that trade-in will be deemed an expression of your intent to cancel your Monthly or Annual Plan and it will be cancelled."[14]

33.    At all relevant times, each version of the Terms and Conditions has included an express provision that any updates Apple makes that benefit the consumer take effect immediately. "If Apple adopts any revision to this Plan that would broaden your coverage without additional cost or any increase in service fees, the broadened coverage will immediately apply to this Plan."[15] The various updates to the Terms and Conditions set out above that improved and broadened consumers' rights therefore became effective immediately.

34.    Further, at all relevant times, the Terms and Conditions have provided at the top of the contract that "THE BENEFITS CONFERRED BY THIS PLAN ARE IN ADDITION TO ALL RIGHTS AND REMEDIES PROVIDED UNDER CONSUMER PROTECTION LAWS AND REGULATIONS. THIS PLAN SHALL NOT PREJUDICE THE RIGHTS GRANTED BY APPLICABLE CONSUMER LAW, INCLUDING THE RIGHT TO RECEIVE REMEDIES UNDER STATUTORY WARRANTY LAW AND TO SEEK DAMAGES IN THE EVENT OF THE NON-PERFORMANCE BY APPLE OF ANY OF ITS CONTRACTUAL OBLIGATIONS."[16]

35.    At all relevant times, the Terms and Conditions have provided that "the laws of the State of California govern Plans purchased in the United States" unless they are "inconsistent with the laws of any jurisdiction where" a consumer purchased their Plan.[17]

36.    At all relevant times, the Terms and Condition define the "Administrator" of the Plan as "Apple Inc."[18] "The Administrator is responsible for the collection and transfer to AppleCare Service Company, Inc. of the purchase price for the Plan and for the administration of

---

[14] https://www.apple.com/legal/sales-support/applecare/applecareplus/2406/240618_applecareplus_us.pdf § 9.
[15] https://www.apple.com/legal/sales-support/applecare/applecareplus/071520_applecareplus_us.pdf § 11.
[16] https://www.apple.com/legal/sales-support/applecare/applecareplus/071520_applecareplus_us.pdf
[17] https://www.apple.com/legal/sales-support/applecare/applecareplus/071520_applecareplus_us.pdf § 12(n).
[18] https://www.apple.com/legal/sales-support/applecare/applecareplus/071520_applecareplus_us.pdf

claims under the Plan."[19]

37.      To summarize, at all relevant times, the only consideration Apple provided consumers under AppleCare+ contracts was repair, replacement, and support services for a specific Covered Device. As explained in Count I below, once a Covered Device was traded in or returned, Apple could not in good faith continue to charge consumers for AppleCare+ on devices that Apple knew the consumers no longer owned. Apple was therefore obligated to cancel AppleCare+ contracts when the associated Covered Devices were traded in or returned regardless of the trade-in or return date or the details of the Cancellation provision.

38.      Further, from April 20, 2021, forward, the Terms and Conditions have expressly required Apple to cancel AppleCare+ contracts upon the completion of at least certain trade-ins or returns. Because these updates to the AppleCare+ cancellation provision benefitted the consumer, they took effect immediately. Apple was obligated by the express terms of the contract in effect at the time of Plaintiff's trade-in and the trade-ins or returns of many members of the Class to automatically cancel the AppleCare+ contract associated with the old Covered Devices.

39.      Throughout the relevant period, the Terms and Conditions have also always provided that Apple is subject to "applicable consumer law." As set out in Counts II and III, Apple violated California consumer protection law applicable to it throughout this period.

### *Apple Trade-Ins*

40.      Just as Apple tracks Covered Devices under AppleCare+ by serial number, Apple also tracks trade-ins and returns of Apple devices by serial number. In fact, Apple's trade-in FAQ includes an answer to "How do I find the serial number on my Apple device?"[20]

41.      Apple advertises its "Apple Trade In" service as "a win-win-win."[21] "With Apple

---

[19] *Id.*
[20] https://www.apple.com/shop/trade-in (last accessed August 14, 2024).
[21] https://www.apple.com/shop/trade-in (last accessed August 14, 2024).

Trade In, you can get a great value for your current device and apply it toward a new one. And you can do it all online or at an Apple Store. If your device isn't eligible for credit, we'll recycle it for free. It's a great deal for you and the planet."[22]

42.     The Terms and Conditions of the Apple Trade In Program provide that, "[a]t completion of this transaction, ownership of your device transfers to Vendor, and you assign to Apple the right to collect from Vendor the value you receive."[23] Further, "the trade-in transaction is final and cannot be cancelled by you unless the quoted value has been revised and declined by you."[24]

43.     Apple informs consumers that, after a trade-in, "[i]f your device is in good shape, we'll help get it to a new owner."[25] In other words, if Apple can return the device to circulation for its own benefit, it will. And Apple tells consumers that, if the device has "seen better days, we can recycle it for free."[26] That is, Apple will permanently destroy devices that it does not believe it can profitably return to circulation.

44.     Because Apple tracks all Covered Devices under an AppleCare+ plan, trade-ins, and returns by serial number, Apple has actual knowledge each time a Covered Device has been traded in or returned. Apple also knows that each specific device that has been traded in has either been recycled (*i.e.*, permanently destroyed), distributed to a new owner, or kept by Apple or its vendor pending distribution or destruction.

### *AppleCare+ is Worthless Without a Covered Device—and Apple Knows It*

45.     After a consumer trades in or returns a Covered Device, the consumer receives no value from AppleCare+ for that device. Because AppleCare+ is an extended warranty and service plan for a specific device, it becomes worthless once a consumer no longer owns the

---

[22] *Id.*
[23] https://www.apple.com/legal/sales-support/trade-in/us/ (last accessed August 14, 2024).
[24] *Id.*
[25] https://www.apple.com/shop/trade-in (last accessed August 14, 2024).
[26] *Id.*

Covered Device.

46.     For Apple, on the other hand, AppleCare+ becomes exceptionally profitable if it is not cancelled after a consumer returns or trades in in a Covered Device because the service is guaranteed to be cost-free to Apple. If a consumer still owns a Covered Device, Apple remains on the hook for repair, replacement, and support services. That's Apple's end of the deal and the only consideration provided to consumers by the contract. But as soon as the consumer returns or trades in a Covered Device, Apple no longer needs to worry about providing any repairs, replacements, or support. For Apple, the AppleCare+ contract becomes pure profit from that point forward, and the consumer receives no consideration from that point forward.

47.     Apple knows that it is wrong to charge consumers something for nothing. Apple nevertheless originally chose to adopt and retain a system that did not automatically cancel AppleCare+ subscriptions when consumers returned or traded in devices, instead requiring consumers to send a written cancellation notice in the mail with a proof of purchase. When Apple later updated the Terms and Conditions to provide for automatic cancellation, Apple failed to adopt procedures sufficient to implement the updated cancellation policy, and Apple limited automatic cancellations to plans with certain Plan Terms. Given Apple's status as an integrated and sophisticated tech company capable of automatically starting AppleCare+ subscriptions by serial number, Apple's failure to implement an adequate system for automatic cancellations can only be seen as intentional. As a result, Apple continued to charge Plaintiff and members of the Class for AppleCare+ services that it knew were worthless.

48.     Apple has disregarded public criticisms of its institutional decision to continue charging its customers for AppleCare+ for devices they no longer own. Consumers have been publicly complaining for years on Apple's own forums and elsewhere about Apple charging for AppleCare+ subscriptions after a device had already been traded in or returned. For example:

- *January 5, 2020*: "Why am I being charged 12.99 each month for Apple Care when I

don't have an [i]phone 8 anymore?"[27]

- *January 9, 2020*: "Charge $14.99 For Apple care for an iPhone that I don't have!! Apple is charge me for 3 months apple care 14.99 for a phone that was returned to Apple !!!!!"[28]

- *June 3, 2021*: "I am still being charged Apple Care for a phone I returned. I was charged Apple Care, which I did not want. I returned the phone and was informed the Apple Care would be removed as well. I was recently charged for Apple Care for a phone I returned within the allotted time frame. How do I remove this subscription from my account?"[29]

- *July 16, 2021*: "I swapped my iphone 11 to 12 pro but unable to continue using my previous apple care. I was told by Apple sales agent to buy a new one and to request for refund."[30]

- *February 9, 2022*: "I'm being charged for Apple Care of an iPhone I returned to Apple. . . . I had Apple care on my iPhone 11. Bought a new 13 from Apple and sent old phone in for part exchange. Foolishly assumed the apple care would transfer to new phone and carry on but have now been charged for the 2nd month in a row for Apple care on a device that Apple knows I don't own. I tried to find a way to remove the subscription online but don't see how to. I don't have the serial number or details any more."[31]

---

[27] https://discussions.apple.com/thread/251013977?=undefined&followedChain=true&previousThread=253669574021&sortBy=rank (last accessed August 15, 2024).
[28] https://discussions.apple.com/thread/251026334?=undefined&followedChain=true&previousThread=253990631021&sortBy=rank (last accessed August 15, 2024).
[29] https://discussions.apple.com/thread/252830105?sortBy=rank (last accessed August 15, 2024).
[30] https://discussions.apple.com/thread/252961984?=undefined&followedChain=true&previousThread=254104517021&sortBy=rank (last accessed August 15, 2024).
[31] https://discussions.apple.com/thread/253653398?=undefined&previousThread=252830105021&sortBy=rank (last accessed August 15, 2024).

- *February 15, 2022*: "I'm being charged for iPhone Apple Care when I already trade it. My two son's traded in their iPhones last year I noticed that I'm still be charged for one iPhone 7 AppleCare. I have two iPhones and four iPads. I'm not sure why I am still being charged please advise."[32]

- *May 16, 2022*: "PSA: Apple care and returns . . . Background: I bought a iPhone 13 pro with apple care from Apples['] own online store, returned it and noticed that apple did NOT cancel apple care when it was returned unopen within the 14 day window. Spoke with support who cancelled the apple care and have basically told me I'm SOL [*i.e.*, shit out of luck] for a refund for the time I was paying for apple care for a phone I purchased through them. So, be wary of apple care with returns. Let my loss be your gain. . . . TLDR: if you return a phone, apparently they don't cancel warranty on the product you're returning and tell you 'it's just like any other subscription, you have to cancel it'. So cancel apple care separately when returning! Greasy."[33]

- *June 10, 2022*: "How do I cancel an Apple Care account for a device that I traded in and was removed from my account? I am still getting charged for it. I initially purchased an Apple Watch 3, and then used it to trade in and receive a credit for a 7. I had initially set the apple care plan to be charged monthly. Is there a way to stop these charges? Since the device was traded in, it doesn't appear on my account or anything related to it. The subscription doesn't appear in my subscription area either."[34]

- *June 22, 2022*: "[I'm] being charged for apple care on a phone that was returned the Ne[xt] day of purchase. I have returned that phone a day after I purchased it back to

---

[32] https://discussions.apple.com/thread/253669574?=undefined&previousThread=254579670021&sortBy=rank (last accessed August 15, 2024).
[33] https://www.reddit.com/r/iphone/comments/ur8fnm/psa_apple_care_and_returns/ (last accessed August 15, 2024).
[34] https://discussions.apple.com/thread/253961688?=undefined&followedChain=true&previousThread=253653398021&sortBy=rank (last accessed August 15, 2024).

Stevens creek apple. I just realized I am still getting charged for apple care."[35]

- *August 10, 2022*: "I have been paying apple care since dec. 2021 on a device that i traded in, how do i get a refund or transfer this coverage to my new phone."[36]

- *January 23, 2023*: "I'm still getting charged for AppleCare from my iPhone13, I recently change to the iPhone14 pro."[37]

- *February 14, 2024*: "This just happened to me. Paying AppleCare on a phone since 2020. They refunded for two of the four years, but I still don't find that satisfactory. I'm shocked there isn't a class action lawsuit about this."[38]

49. On information and belief, Apple has continued charging consumers for AppleCare+ for devices that Apple knows they no longer own to the present. Unless enjoined, there is every reason to believe that Apple will continue this profitable practice.

## Class Allegations

50. Plaintiff brings this action under Federal Rule of Civil Procedure 23(b)(2) and (b)(3) individually and for this Class of similarly situated individuals:

> All individuals who traded in or returned a Covered Device under an AppleCare+ contract in the last four years whose contract was not immediately cancelled, resulting in new monthly fees or a failure to provide prorated refunds.

51. Excluded from the Class are Defendants, their co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case, and all persons within the third

---

[35] https://discussions.apple.com/thread/253990631?=undefined&followedChain=true&previousThread=251775524021&sortBy=rank (last accessed August 15, 2024).
[36] https://discussions.apple.com/thread/254104517?=undefined&followedChain=true&previousThread=253990631021&sortBy=rank (last accessed August 15, 2024).
[37] https://discussions.apple.com/thread/254579670?sortBy=rank (last accessed August 15, 2024).
[38] https://www.reddit.com/r/iphone/comments/ur8fnm/psa_apple_care_and_returns/ (last accessed August 15, 2024).

degree of relationship to any such persons. The class is ascertainable by objective criteria and can be established and notice accomplished through Defendants' business records.

52. **Numerosity**. The Class is so numerous that joinder of all members is unfeasible and not practical. Apple sells millions of devices each year. Given Apple's scale and the volume of public complaints regarding the practice at issue in this case and the years they span, the Class contains at least thousands and potentially up to millions of consumers. The exact size of the Class is easily ascertainable, as each class member can be identified by using Defendants' records tracking AppleCare+ Covered Devices by serial number on the one hand and Defendants' records tracking trade-ins and returns by serial number on the other.

53. **Commonality and Predominance**. Questions of law and fact common to all Class members exist and predominate over questions affecting only individual Class members, including:

      i.   The meaning of the AppleCare+ contracts during the relevant period;

     ii.   Whether consumers receive any consideration in exchange for their payments under an AppleCare+ contract after returning or trading in the related Covered Device;

   iii.   Whether Apple tracks Covered Devices under AppleCare+ contracts by serial number;

    iv.   Whether Apple tracks trade-ins of Apple devices by serial number;

     v.   Whether Apple tracks returns of Apple devices by serial number;

    vi.   Whether Apple knew, should have known, or recklessly disregarded information sufficient to show when Covered Devices under an AppleCare+ contract were traded in or returned;

   vii.   Whether Apple breached its contracts with the Class members;

  viii.   Whether Apple violated the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*;

    ix.   Whether Apple violated California's Unfair Competition Law, Cal. Bus. &

Prof. Code § 17200 *et seq.*;

    x.   Whether Apple unjustly enriched itself;

    xi.   Whether Apple's conduct should be enjoined; and

    xii.   Whether Apple's deliberate decision to charge its customers something for nothing warrants the imposition of punitive damages.

54.   **Typicality**. Plaintiff's claims are typical of the claims of the Class, as they arise out of the same conduct of Defendants, involve the same legal theories, and challenge the same practices. Specifically, Plaintiff challenges Apple's practice of failing to cancel AppleCare+ contracts when it knows consumers have traded in or returned their devices, resulting in damages to the consumer (*i.e.*, new monthly charges or a failure to provide a prorated refund, depending on the Plan Term). Plaintiff and all Class members have been subjected to the same practices and hold the same rights, they are all entitled to the same legal and equitable relief, they have suffered the same impact and injury, and they have all similarly incurred financial damages due to Apple's failure to cancel their AppleCare+ contracts when they traded in or returned a Covered Device. Further, Plaintiff and all members of the Class are entitled to recover at least nominal damages and interest, even where Apple has refunded some or all its wrongful overcharges. Therefore, each member of the Class is entitled to recover some amount of financial damages, there are no uninjured class members, and there are no unique defenses that could result in the dismissal of Plaintiff's claims or the claims or any member of the Class.

55.   **Adequacy**. Plaintiffs and their counsel will fairly and adequately represent the interests of the Class members. Plaintiff has no interests antagonistic to, or in conflict with, the interests of the other Class members, and she will zealously pursue their claims. Plaintiff's lawyers are highly experienced with consumer class actions and complex commercial litigation, they are capable of providing the financial resources needed to litigate this matter to conclusion, and they have successfully litigated other nationwide consumer class actions.

56.   **Superiority**. A class action is superior to all other available methods for fairly and efficiently adjudicating the claims of Plaintiff and the Class members. Plaintiff and the Class

members—many of whom are unaware of their rights—have been harmed by Defendants' conduct. Litigating this case as a class action reduces the possibility of repetitive litigation relating to Defendants' wrongful actions and provides an efficient mechanism for adjudication for Class members, whose claims are too small to warrant individual litigation.

57. **Injunctive and Declaratory Relief**. Apple has acted or refused to act on grounds that apply generally to the Class, and final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

## Causes of Action

## <u>Count 1: Breach of Contract</u>

58. Each version of the AppleCare+ Terms and Conditions is a contract between Defendants and consumers.

59. Each of the Defendants has a defined role and responsibilities under the Terms and Conditions. Defendant Apple Inc. advertises AppleCare+ as one of many "integrated" services it offers to consumers, and the Terms and Conditions provide that Apple Inc. "is responsible for the collection and transfer to AppleCare Service Company, Inc. of the purchase price for the Plan and for the administration of claims under the Plan."[39] That is, Apple Inc. is the party that takes money from Plaintiff and members of the Class under the express terms of the parties' contract. Defendant AppleCare Service—a fully owned subsidiary of Apple Inc.—has certain other defined responsibilities under the contract.

60. From April 20, 2021, forward, the express terms of the parties' contract required Defendants to automatically cancel AppleCare+ when consumers made certain returns and trade-ins of Covered Devices. For instance, when Plaintiff completed the trade-in process through Apple's official program for device number F17DH22G0D88 on January 8, 2022, the corresponding Cancellation provision stated: "For Monthly Plans, if you trade-in your Covered

---

[39] *Id.*

Equipment to Apple or an Apple Authorized Reseller as part of an Apple authorized trade-in program, that trade-in will be deemed an expression of your intent to cancel your Monthly Plan and it will be cancelled."[40] Plaintiff was on a Monthly Plan when she completed her authorized trade-in directly with Apple, but Apple did not cancel the AppleCare+ plan on her old Covered Device but instead kept charging her monthly fees for it for over two years.

61.     When Apple adopted more consumer-friendly terms in its updates to AppleCare+'s Terms and Conditions, those more beneficial terms took effect immediately for consumers who had purchased AppleCare+ under less favorable terms. Therefore, Plaintiff and members of the Class had the right to rely on more favorable Cancellation terms in effect when they traded in or returned their devices regardless of the date of purchase.

62.     Apple's decision not to automatically cancel AppleCare+ when it knew consumers had traded in or returned their Covered Devices was also a breach of contract before it adopted express terms requiring it to do so, as well as in situations where those express terms do not apply. When Apple itself has assumed ownership of a Covered Device to return it to circulation or have it destroyed, Apple knows that its performance of all its remaining obligations for the life of the contract have become impossible. Apple also knows that the AppleCare+ contract will necessarily provide the consumer with no consideration for the life of the deal. Apple recognizes as much by giving customers under fixed term plans the right to receive a prorated refund upon cancellation and by its current policy of automatically cancelling at least certain types of AppleCare+ contracts after trade-ins and returns. But there is simply no way that Apple can keep charging *any* of its customers for AppleCare+ services in good faith once Apple knows the Covered Device has been removed from circulation. Apple's decision to continue charging for AppleCare+ despite a total lack of consideration rather than cancel the contracts when its continued performance becomes impossible is, at the very least, a breach of its

_____

[40] https://www.apple.com/legal/sales-support/applecare/applecareplus/2201/220101_applecareplus_us.pdf § 9.3.

duty of good faith and fair dealing in all circumstances.

63.    Plaintiff and members of the Class have been damaged by Defendants' breach of contract. Plaintiff continued paying monthly AppleCare+ subscription fees for a phone she had officially traded in to Apple for more than two years. These unnecessary and unlawful fees came at a time of high inflation and high interest rates, when household budgets were strained and any extra money could earn interest at rates not seen in decades.

64.    Because every consumer would be financially benefitted by automatic cancellation regardless of their Plan Term, every consumer who did not have their AppleCare+ subscription cancelled when they traded in or returned their Covered Devices was damaged. Even where Apple provided partial or full refunds, affected consumers were damaged by the lost time value of money and are entitled to recover interest.

65.    In addition to all other categories of damages that Plaintiff and members of the Class are entitled to recover for breach of contract, Plaintiff and the Class seek nominal damages to vindicate their contract rights as well.

66.    At all relevant times, the Terms and Conditions have provided that "the laws of the State of California govern Plans purchased in the United States" unless they are "inconsistent with the laws of any jurisdiction where" a consumer purchased their Plan.[41]

67.    With respect to the issues raised in this case, there are no material conflicts between the laws of California and the laws of any other jurisdiction. Further, as the drafter of the Terms and Conditions and a resident of California, Apple should have every expectation that California law will govern claims arising under AppleCare+ contracts.

## Count 2: California's Unfair Competition Law ("UCL")

68.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, prohibits "unfair competition," including "any unlawful, unfair or fraudulent business act or

---

[41] https://www.apple.com/legal/sales-support/applecare/applecareplus/071520_applecareplus_us.pdf § 12(n).

CLASS ACTION COMPLAINT - 20

practice . . . ." Each of these three categories of conduct provides a distinct basis for liability under the UCL. As set out below, Plaintiff brings claims under the "unfair" and "unlawful" prongs of the UCL. At this time, Plaintiff does not bring a claim under the "fraudulent" prong or allege any claims sounding in fraud.

69.     With respect to "unfair" practices, courts applying the UCL distinguish between competitor and consumer claims. For consumers, courts "generally continu[e] to apply a broad[] standard . . . encompassing business practices that 'offend[] an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 854 (N.D. Cal. 2022) (quoting *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal.App.4th 861, 886-87, 85 Cal. Rptr. 2d 301 (1999)).

70.     At heart, it is simply unfair for Apple to continue charging for AppleCare+ coverage when Apple knows a consumer has traded in or returned a Covered Device. Through the return or trade-in, the consumer has relinquished ownership of the device forever to Apple or its agents. From that moment forward, Apple is free to return the device to circulation for its own benefit or to destroy the device, as it tells consumers it will do—a practice that is also to Apple's benefit because it reduces the overall supply of smartphones in the market. But whatever Apple decides to do, it is guaranteed to never have to provide repair, replacement, or support services under the prior owner's AppleCare+ contract. Without the Covered Device, consumers are not entitled to any benefits under an AppleCare+ contract tied to that device, and Apple knows that they will receive no consideration going forward either for monthly renewals or for the remaining period under fixed-term plans. Apple is relying on the statistical certainty that, with its millions of AppleCare+ customers, a substantial percentage of them will not immediately cancel their AppleCare+ subscriptions when trading in or returning a device, and Apple will be able to reap guaranteed profits in exchange for nothing. That is unfair. In legal terms, "the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Stark*, 635 F. Supp. 3d at 854 (citation omitted). Or, as one consumer put it above, the practice is

"greasy." And it violates the "unfair" prong of the UCL regardless of whether Apple committed fraud or made any misrepresentations.

71.     Apple's conduct is also "unlawful" under the UCL. "Unlawful acts are 'anything that can properly be called a business practice and that at the same time is forbidden by law . . . be it civil, criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008).

72.     Apple's conduct is unlawful because it violates California's Consumer Legal Remedies Act, as set out in Count III below.

73.     Apple's conduct is also unlawful under the common law because a company is not knowingly allowed to charge its customers without providing a good or service in return. Apple provided no consideration to consumers under AppleCare+ contracts from the moment of trade in or return forward, and Apple had no lawful right to continue charging customers or otherwise retain the benefits of the AppleCare+ contracts when it knew consumers no longer owned the associated Covered Devices.

74.     As set out in Count I, Plaintiff and members of the Class all suffered financial injury, including the lost time value of money, due to Defendants' unfair and unlawful conduct in violation of the UCL.

75.     Plaintiff seeks to enjoin further unlawful and unfair acts or practices by Defendants under Cal. Bus. & Prof. Code § 17203.

76.     Plaintiff, individually and on behalf of the other Class members, requests that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair and/or unlawful practices; to order Defendants to cancel the AppleCare+ contracts of all customers who have already returned or traded in the Covered Devices; to order Defendants to implement systems sufficient to automatically cancel all AppleCare+ contracts when the associated Covered Device has been traded in or returned; to restore, via restitution or disgorgement, any monies Defendants acquired by unfair competition, as provided by Cal. Bus. & Prof. Code §§ 17203 & 3345; and for such other relief as may be just and proper.

## **Count 3: California's Consumer Legal Remedies Act ("CLRA")**

77.     The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770.

78.     Defendants are "persons" under Cal. Civ. Code § 1761(c).

79.     Plaintiff and members of the Class are "consumers" under Cal. Civ. Code § 1761(d) who purchased an AppleCare+ contract.

80.     The Covered Devices under an AppleCare+ contract are "goods" under Cal. Civ. Code § 1761(a).

81.     The services that Apple is obligated to provide in connection with a Covered Device under an AppleCare+ contract are "services" under Cal. Civ. Code § 1761(b).

82.     Both the making of and performance under the AppleCare+ contracts are "transactions" under Cal. Civ. Code § 1761(e).

83.     To the extent that Apple promised automatic cancellation of AppleCare+ contracts for certain consumers, including Plaintiff, upon trade-in or return but failed to deliver on that promise, Apple "[r]epresent[ed] that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law" in violation of Cal. Civ. Code § 1770(a)(14). Specifically, Apple represented that consumers had the right to automatic cancellation—or that Apple had the obligation to implement automatic cancellation—but the transactions of Plaintiff and certain members of the Class did not involve or confer those promised rights or obligations.

84.     To the extent that the AppleCare+ contracts did not provide for automatic cancellation upon trade-in or return for certain devices at certain times but instead suggested that consumers had to take affirmative action to cancel AppleCare+ beyond the trade-in or return, Apple "[i]nsert[ed] an unconscionable provision in the contract" in violation of Cal. Civ. Code § 1770(a)(19). It is unconscionable for Apple to assert a right to continue charging customers or retain pre-paid benefits under AppleCare+ contracts associated with Covered Devices that Apple

knows the consumers no longer own. From that point forward, Apple knows that the AppleCare+ contract cannot provide the consumer any benefit, and Apple knows that it is guaranteed to be cost-free for the company. It is unconscionable for Apple to assert a right to continue charging consumers something for nothing under these circumstances for essentially the same reasons the conduct is unfair under the UCL and breaches Apple's duty of good faith and fair dealing.

85.     Defendants' actions occurred in the sale of services to a consumer.

86.     Plaintiff and members of the Class suffered ascertainable loss caused by Defendants' conduct, as set out in Count I.

87.     Plaintiff, on behalf of herself and the Class, seeks an order enjoining Defendants' unfair acts or practices under Cal. Civ. Code § 1780(a)(2). Specifically, Plaintiff asks the Court to order Apple to (1) immediately cancel all AppleCare+ contracts for Covered Devices that have already been traded in or returned and (2) adopt systems and practices sufficient to automatically cancel AppleCare+ subscriptions whenever Apple learns a Covered Device has been traded in or returned.

88.     Plaintiff, on behalf of herself and the Class, seeks an award of costs and attorneys' fees under Cal. Civ. Code § 1780(e).

89.     At this time, Plaintiff does not bring a claim for damages under the CLRA. Plaintiff reserves the right to amend her complaint to add damages claims under the CLRA thirty days or longer after compliance with the notice requirements of Cal. Civ. Code § 1782(a), should she send such a notice and Defendants fail to meet Plaintiff's demands.

### Count 4: Unjust Enrichment or Quasi-Contract Claim for Restitution

90.     In the alternative to Count I, Plaintiff and the Class allege a claim for unjust enrichment.

91.     Although the Ninth Circuit has previously suggested that California does not recognize a state law cause of action for unjust enrichment, "the California Supreme Court" has since "recognized that an unjust enrichment claim is valid in at least some circumstances." *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 856 (N.D. Cal. 2022) (discussing *Astiana v. Hain Celestial*

*Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015), and *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 353 P.3d 319, 327 (Cal. 2015)). To the extent that certain courts have applied *Astiana* despite the intervening *Hartford* decision, "even under the Ninth Circuit's *Astiana* decision, a court may construe a purportedly non-existent claim for unjust enrichment as a valid 'quasi-contract claim seeking restitution,' *Astiana*, 783 F.3d at 762, the elements of which are 'that the defendant received and unjustly retained a benefit at the plaintiff's expense,' *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016)." *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 857 (N.D. Cal. 2022).

92.    Here, whether labelled "unjust enrichment" or a "quasi-contract claim," Defendants received and unjustly retained a benefit at the expense of Plaintiff and members of the Class each time Defendants failed to cancel an AppleCare+ contract when they learned the Covered Device had been traded in or returned. Defendants' conduct is unjust for the same reasons it is "unfair" under the UCL, "unconscionable" under the CLRA, and a breach of the duty of good faith and fair dealing.

93.    To the extent Defendants are not otherwise required to do so as a matter of contract, they should be required to return all the benefits they unjustly retained under AppleCare+ contracts following trade-ins or returns of Covered Devices to Plaintiff and members of the Class.

## Prayer for Relief

94.    Plaintiff, individually and for members of the Class, respectfully requests that the Court enter judgment in Plaintiff's favor and against Defendants, as follows:

    i.    Certification of the proposed Class, including appointment of Plaintiff's counsel as Class Counsel and Plaintiff as class representative;

    ii.    An order temporarily and permanently enjoining Defendants from continuing to charge consumers for AppleCare+ after a Covered Device has been traded in or returned and requiring Defendants to identify and cancel all such active contracts;

1      iii.  An order declaring that Apple is required to cancel AppleCare+ contracts

2          when it knows a consumer has traded in or returned a Covered Device;

3      iv.  Costs, restitution, damages, and/or disgorgement, each in an amount to be

4          determined;

5      v.  Nominal damages;

6      vi.  Punitive damages;

7      vii.  Pre- and post-judgment interest on any amounts awarded;

8      viii.  An award of costs and attorneys' fees;

9      ix.  A jury trial on all issues so triable; and

10      x.  Such other or further relief as may be appropriate.

11  Dated this 23d day of August, 2024.

12

13          s/ Candice L. Fields

14          Candice L. Fields
        CANDICE FIELDS LAW, PC

15

16          Aaron K. Block (*Pro Hac Vice Forthcoming*)
        Max Marks (*Pro Hac Vice Forthcoming*)

17          THE BLOCK FIRM, LLC

18          *Counsel for Plaintiff*

19

20

21

22

23

24

25

26

27