UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASSANDRA EDWARDS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE, INC., et al.,<br><br>Defendants. | Case No. 24-cv-05795-NW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION TO DISMISS; DENYING APPLE'S MOTION TO STAY DISCOVERY**<br><br>Re: ECF Nos. 30, 56 |

Plaintiffs Cassandra Edwards, Everett Scott, Allan Amsel, and Brittany Frank (collectively "Plaintiffs") bring this putative class action against Apple Inc. and AppleCare Service Company, Inc. (collectively "Apple" or "Defendants") alleging Defendants wrongfully charged and retained payment for AppleCare+ services on devices Plaintiffs had returned to Apple. Amended Complaint ("AC"), ECF No. 26. Apple timely moved to dismiss the AC. Mot., ECF No. 30. The Court GRANTS the motion in part and DENIES it in part. Apple also moved to stay discovery, ECF No. 56, which the Court DENIES.

I.  BACKGROUND

    A.  Factual Allegations[1]

        1.  **Apple and AppleCare+**

One of the most well-known companies in the world, Apple manufactures and sells a range of electronic devices, including the ubiquitous iPhone, iPad, Apple Watch, and Apple AirPods alongside a variety of related software, services, and accessories. AC ¶¶ 22-23. Since Apple's

---

[1] Unless otherwise noted, the following facts are taken from Plaintiffs' AC and assumed to be true for the purposes of this order.

inception, the company has created an interconnected ecosystem of devices and services with a loyal and locked-in customer base. *Id.* ¶ 25. Apple has virtually unparalleled knowledge of who its customers are, which Apple devices and products they own and use, and how much money Apple is collecting from those customers on a real-time basis. *Id.* ¶ 26.

Of relevance here are two of Apple's services: (1) the "Apple Trade-in" program and (2) AppleCare+. The trade-in service grants eligible customers the opportunity to trade-in old devices when they upgrade to a new device. *Id.* ¶¶ 49-50. If the device is in good shape, a customer may exchange that device for credit towards another device; if the device "has seen better days," Apple will recycle it for free. *Id.* ¶ 51. Either way, ownership of the device will be transferred to Apple (via Apple's vendor). *See Id.* ¶ 50; *see also* Apple Trade-In Terms,[2] ECF No. 30-7 ("At completion of this transaction, ownership of your device transfers to Vendor, and you assign to Apple the right to collect from Vendor the value you receive."). AppleCare+, available for purchase from Apple or an Apple Authorized Reseller, is an extended warranty and service plan for Apple devices. *Id.* ¶ 53. Coverage is tied to specific "Covered Devices" by a unique serial number and is nontransferable between devices. *Id.* ¶¶ 30, 53. Because Apple tracks all Covered Device trade-ins and returns by serial number, Apple has actual knowledge when a specific device has been traded-in to be either been taken out of circulation or resold. *Id.* ¶ 27, 52.

Since September 14, 2021, the Terms and Conditions governing AppleCare+ ("the Plan")[3] have expressly stated that trading-in a Covered Device constitutes an expression of a consumer's

---

[2] As part of its motion, Apple asked the Court take judicial notice of seven documents. Req. for Judicial Notice ("RJN"), ECF No. 30-3. This Order references just three: Ex. 6, Apple Trade-In Terms (ECF No. 30-7); Ex. 1, the Plan (ECF No. 30-5); and Ex. 4, Scott's CLRA Letter to Apple (ECF No. 30-8). Plaintiffs do not dispute that Exhibits 1 and 4 are judicially noticeable, they do argue that the Apple Trade-In Terms are improperly before the Court. Opp. to Request for Judicial Notice, ECF No. 32. The Court disagrees. The AC directly quotes from the Apple Trade-In Terms, *see* AC ¶ 50, and is consequently incorporated by reference. *See, e.g.*, *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Since the Court did not rely on any of the remaining exhibits in reaching its decision, the Court DENIES the remainder of the RJN as moot.

[3] The Plan refers to all versions of the Terms and Conditions since September 14, 2021. Though there have been several revisions to the terms since then, there has been no substantive amendment to any of the sections discussed in this Order.

intent to cancel the associated AppleCare+ plan.[4]  Plan, ECF No. 30-5 § 9.3; AC ¶ 31.

Specifically, the Plan states:

> For Monthly Plans, if you trade-in your Covered Equipment to Apple or an Apple Authorized Reseller as part of an Apple authorized trade-in program, that trade-in will be deemed an expression of your intent to cancel your Monthly Plan and it will be cancelled.

Plan § 9.3.

Additionally, as of January 1, 2022, AppleCare+ customers on monthly plans could receive a pro rata refund based on the percentage of unexpired time remaining on their monthly plans.  *Id.* § 9.1(b)(1).

### 2. Injury to Named Plaintiffs

In their Complaint, Plaintiffs allege that Apple has unjustly enriched itself by continuing to charge for AppleCare+ after Plaintiffs traded-in Covered Devices, and they seek damages and injunctive relief accordingly.  AC ¶¶ 14-17.  Though the named Plaintiffs have different circumstances, all experienced some variation of a similar story.  *Id.*  Each bought an iPhone from Apple or through AT&T, an Apple Authorized Reseller, and (either upon purchase or shortly thereafter) purchased a monthly subscription to AppleCare+ for their iPhone.  *Id.*  After some time, each Plaintiff traded-in their original iPhone through Apple or AT&T with the understanding that the value of their phone would offset the purchase of a new phone or, if the device itself had no value, would at least be recycled appropriately.[5]  *Id.*  As part of this program, each Plaintiff relinquished custody of their original iPhone, indicating their intent to cancel the AppleCare+ subscription on the device they traded-in.  *Id.*  Upon purchase of a new device, three of four Plaintiffs also purchased a new AppleCare+ plan (Amsel, Edwards, and Scott).  *Id.*

For Plaintiffs Amsel and Edwards, though both traded-in an AppleCare+ covered device directly to the Apple store, Apple failed to cancel their original AppleCare+ subscription at the

---

[4] At all relevant times, the Plan has included an express provision that made updated terms immediately effective when the update broadened coverage for current customers.  *Id.* ¶ 33.  Thus, sections 9.3 and 9.1(b)(1) became effective on the respective days Apple added those provisions to an updated version of the Plan.

[5] All of the named Plaintiffs finalized their trade-ins after January 1, 2022, making new section 9.3 and revised section 9.1(b)(1) effective at the time of trade-in.  *See infra* n.4.

3

time of trade-in. *Id.* ¶¶ 14, 16. Both Amsel and Edwards spent some portion of time unwittingly paying for two AppleCare+ subscriptions: (1) the plan they purchased for their new device and (2) the plan they purchased for the old device that they no longer owned and was in Apple's possession. *Id.* Both Amsel and Edwards believed their earlier subscriptions had been cancelled upon trading-in their original devices and paid upwards of $400 for more than 30 months of auto-renewing AppleCare+ charges on the device they had traded-in. *Id.* Upon learning otherwise, Edwards complained directly to Apple and was able to recoup most of her post-trade-in AppleCare+ charges "after multiple levels of review." *Id.* ¶ 14. Though Amsel also complained directly to Apple, Apple only refunded him the amount of one month of AppleCare+. *Id.* ¶ 16.

In contrast, Plaintiffs Frank and Scott traded-in their AppleCare+ covered devices to AT&T and never received any refund on any AppleCare+ overpayment. *Id.* ¶¶ 15, 17. Frank alleges prorated damages for the 13 days of the month after he traded-in his device, plus an additional 22 months of charges after trade-in. *Id.* ¶ 17. Scott's alleged damages are limited to prorated overpayment for the 16 days of the month he paid after the device was no longer in his possession. *Id.* ¶ 15.

### B. Procedural History

Edwards filed an initial Class Action Complaint on August 23, 2024. ECF No. 1. Scott filed his own action with a similar complaint on September 30, 2024. *See Scott v. Apple, Inc.*, No. 5:24-cv-6866 (N.D. Cal.), ECF No. 1. The Court consolidated the two actions on October 29, 2024, ECF No. 25, and Plaintiffs filed the AC on November 15, 2025. ECF Nos. 25, 26.

The week before the deadline to file the AC, Plaintiffs allege that Apple began refunding a subset of putative class members (one of whom was Edwards) funds related to previous AppleCare+ contracts. *Id.* ¶¶ 58-65. Given the timing, Plaintiffs allege that Apple's refund campaign resulted directly from the instant suit. *Id.* ¶ 65.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) is designed to "test[ ] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2)

4

insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and are therefore insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).

Under Federal Rule of Civil Procedure 15(a), the Court should freely grant leave to amend "when justice so requires," keeping in mind Rule 15's underlying purpose "to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted).

### III.   DISCUSSION

#### A.   Breach of Contract (Count I)

A claim for breach of contract in California requires a plaintiff to establish: (1) the existence of a valid contract, (2) the plaintiff's performance or excuse for nonperformance, (3) the defendant's breach, and (4) resulting damages. *Escamilla v. Miranda*, No. 23-CV-05033-BLF, 2024 WL 944225, at *3 (N.D. Cal. Jan. 19, 2024). Apple concedes that Plaintiffs have sufficiently alleged the first two elements because the Plan constitutes a valid contract, and all Plaintiffs paid monthly fees for AppleCare+. Mot. at 7. Apple instead challenges whether Plaintiffs have alleged the remaining two elements: (1) as to Frank and Scott, Apple insists there is no breach and (2) as to Amsel and Edwards, Apple argues that they failed to properly allege that they'd been damaged. The Court considers both contentions below.

##### 1.   **Frank and Scott Sufficiently Allege Breach**

Frank and Scott allege that Apple breached § 9.3 of the Plan both (1) expressly and (2) under the doctrines of substantial performance and the duty of good faith and fair dealing. AC

5

¶¶ 87-89. As alleged in the AC, Frank and Scott traded-in their iPhones at AT&T stores, but Apple failed to cancel the AppleCare+ plan associated with those devices as required under § 9.3. Apple does not dispute the facts underlying the supposed breach—it admits that Frank and Scott traded-in their devices at an AT&T store and that Apple never cancelled the associated AppleCare+ plans. Apple argues instead that Plaintiffs failed to trigger Apple's duty to cancel because Plaintiffs failed to trade-in their devices at a location authorized under § 9.3. Stated simply, the parties disagree about the meaning of the contract. Because Plaintiffs' interpretation of the provision is reasonable, Plaintiffs have sufficiently alleged their breach of contract claim.

On a motion to dismiss a contract claim for breach, the critical question is whether plaintiff's interpretation of the contract is reasonable. *Wiwynn Corp. v. X Corp.*, No. 24-CV-05322-AGT, 2025 WL 409388, at *1 (N.D. Cal. Jan. 31, 2025). If it is, the Court must allow the claim to proceed. *See Sisley v. Sprint Commc'ns Co.*, 284 F. App'x 463, 466 (9th Cir. 2008) (reversing Rule 12(b)(6) dismissal when plaintiff "based her allegation that [defendant] breached the contract on a reasonable interpretation of the contract").

Plaintiffs offer a reasonable interpretation of the Plan. Section 9.3 states that trade-ins "will be deemed an expression of your intent to cancel" AppleCare+ so long as "you trade-in your Covered Equipment to Apple or an Apple Authorized Reseller as part of an Apple authorized trade-in program." Plan § 9.3. Neither party disputes that, as alleged, AT&T is an Authorized Reseller, even though that term is not defined within the Plan. *See* Mot. at 8. Instead, the parties contest the meaning of an "Apple Authorized Reseller" as modified by the phrase "***as part of an Apple authorized trade-in program***." Plan § 9.3 (emphasis added); Mot. at 8. Though the phrase is not defined in the Plan, Apple contends that the Plan "unambiguously limits cancellations under Section 9.3." Mot. at 8. To find otherwise, Apple argues, presumes every Authorized Reseller is part of the "trade-in program," eliminating any independent meaning added by the phrase. *Id.* ("Construing 'authorized trade-in program' to mean any trade-in to an Authorized Reseller violates basic tenets of contract interpretation, since Section 9.3's specification would be rendered superfluous.").

The Court disagrees and finds the provision ambiguous. As an initial matter, Apple's briefs suggest there are no other members of the "Apple authorized trade-in program" beyond Apple itself. The reference to Authorized Resellers, then, is itself superfluous. Plaintiffs' interpretation of the provision is no less reasonable than Apple's. If anything, it strikes the Court as *more* reasonable: if AT&T can sell Apple devices and AppleCare+ services, it should be able to accept trade-ins at the time the customer makes those purchases. Pursuant to the Plan, it appears AT&T can refund such purchases, at least in some circumstances, an act not so different than trading-in a device for credit. *See, e.g.*, Plan § 9.1(b) ("If you purchased this Plan from an Apple Authorized Reseller and cancel within thirty (30) days of purchase of the Plan, you may need to cancel the Plan via the Apple Authorized Reseller to receive a refund.").

Because the Court finds that Plaintiffs have plausibly alleged that Apple expressly breached the Plan, the Court need not go further to find the AC's breach allegations sufficient to survive a motion to dismiss.

Accordingly, Apple's motion to dismiss Plaintiffs' breach of contract claim is DENIED.

### 1.     Amsel and Edwards Sufficiently Allege Damages.

Apple withdrew its arguments founded on the Plan's limitations of liability provision, and therefore withdrew its challenge to Amsel and Edwards' damages claim.[6] *See* Hr'g Tr. at 17:5-6, ECF No. 67 ("We are not standing on the limitation of liability provision."). Given that concession, the allegations in the AC sufficiently state that Amsel and Edwards were not made whole by Apple at the time each brought suit. *See* AC ¶ 96 (alleging Apple failed to provide prorated refunds to Amsel and Edwards). Edwards' damages, though minimal, are sufficient to bring suit. *Id.* ¶ 14 (alleging approximately $1.37 in damages for the three days of the month after her trade-in). Amsel's damages are based on 36 months of charges and payment after trade-in, approximately $517.68. *Id.* ¶ 16.

---

[6] Apple initially argued that the Plan limited Apple's "contractual liability to 'the original price paid for the Plan.'" Mot. at 11 (citing Plan § 8). Thus, Apple argued that "both Edwards and Amsel ha[d] already recovered the full amount of contract damages to which they [we]re arguably entitled" because each received a refund of at least the cost of a single month of AppleCare+. *Id.*

7

### B.    California's Unfair Competition Law ("UCL") (Counts II)

The UCL prohibits "unlawful, unfair or fraudulent business act[s] or practice[s]" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code §§ 17200 *et seq*. Plaintiffs may pursue claims under any or all of three theories: the "unlawfulness," "fraudulent," or "unfairness" prongs. *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal.App.4th 861, 878 (1999). Because the UCL provides only for equitable remedies, plaintiffs bringing a UCL claim in a federal court must establish that they "lack[ ] an adequate remedy at law" before the court can award them the UCL's equitable relief. *Sonner v. Premium Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).

Plaintiffs here bring their UCL claim under both the "unfair" and "unlawful" prongs. Apple challenges on three fronts: (1) equitable standing; (2) failure to allege an unfair violation; and (3) failure to allege an unlawful violation. The Court addresses each in turn.

#### 1.    Equitable Standing

"The UCL provides only for equitable remedies." *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022) (quoting *Hodge v. Superior Ct.*, 145 Cal. App. 4th 278, 284 (2006)). As set forth in the Ninth Circuit's decision in *Sonner v. Premier Nutrition Corp.*, a court can only "entertain a request for equitable relief" if it has "equitable jurisdiction, which can only exist under federal common law if the plaintiff has no adequate legal remedy." *Guzman*, 49 F.4th at 1313 (discussing *Sonner*). It follows that a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Here, Plaintiffs seek both retrospective and prospective relief: Plaintiffs request "restitution and equitable interest in the alternative to their legal claims," AC ¶ 103, and they "prospectively seek to enjoin" Apple from continuing "further unlawful and unfair acts or practices." *Id.* ¶ 111.

While "nothing in *Sonner* precludes plaintiffs from [seeking equitable relief] in the alternative to remedies at law," *Cepelak v. HP Inc.*, No. 20-cv-02450-VC, 2021 WL 5298022, at *2 (N.D. Cal. Nov. 15, 2021), "most district courts applying *Sonner* have also understood it to require that a plaintiff must, at a minimum, *plead* that she lacks adequate remedies at law if she

8

seeks equitable relief," *Johnson v. Trumpet Behav. Health, LLC*, No. 3:21-CV-03221-WHO, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022) (internal quotation and citation omitted). Plaintiffs here fail to do so. *See* Mot. 14-15. As Apple observed in its Reply, "Plaintiffs focus their opposition arguments on . . . whether or how plaintiffs may pursue concurrent requests for legal and equitable relief," but they fail to acknowledge that "none of those arguments relieves Plaintiffs of their burden to plead facts demonstrating that they are entitled to equitable relief." Reply at 6, ECF No. 33. Plaintiffs have not met that burden. The AC lacks any allegation that the legal remedies available to Plaintiffs are inadequate, nor does it offer any alternative theory of liability. Plaintiffs' request for retrospective relief is DISMISSED.

Plaintiffs request for prospective relief, however, fairs differently. "[C]ourts have rightly emphasized that 'retrospective damages are not an adequate remedy for th[e] prospective harm' that injunctions are designed to prevent." *Nacarino v. Chobani, LLC*, No. 20-CV-07437-EMC, 2021 WL 3487117, at *12 (N.D. Cal. Aug. 9, 2021) (quoting *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021). Where damages compensate for past purchases, an "injunction . . . ensure[s] that [Plaintiffs] (and other consumers) can rely on [Defendant's] representations in the future. *Zeiger*, 526 F. Supp. 3d at 687 (quoting *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 955 (2017). Plaintiffs sufficiently allege that type of harm in the AC. AC ¶ 111. ("Plaintiffs will be unable to rely on the accuracy of Apple's representations" without "an injunction requiring Apple to comply with its representations regarding the termination of AppleCare+."). AC ¶ 111.

### 2. Unfair Prong

Whether conduct is unfair to consumers is determined by weighing the utility of the conduct against the harm to the consumer (the 'balancing' test). *Republican Nat'l Comm. v. Google LLC*, 742 F. Supp. 3d 1099, 1118 (E.D. Cal. 2024) (quoting *Day v. GEICO Cas. Co.*, 580 F. Supp. 3d 830, 844-45 (N.D. Cal. 2022). In applying that test, the Court examines "[the business practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer" and requires the court to "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *S. Bay Chevrolet*, 72 Cal.App.4th at 886-87 (cleaned up). Courts look to whether it is "immoral, unethical, oppressive, unscrupulous or

substantially injurious to consumers" to assess whether and to what extent a business practice is harmful. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012). "[W]here the pleading states a *prima facie* case of harm stemming from an apparently unfair business practice, dismissal on the pleadings is usually inappropriate, as the court cannot weigh the utility of the defendant's conduct without analysis of some evidence." *Garon v. eBay, Inc.*, No. C 10-05737 JW, 2011 WL 6329089, at *7 (N.D. Cal. Nov. 30, 2011).

Plaintiffs allege that Apple has real time knowledge of when devices are traded-in under the Plan, especially when they are traded-in directly to an Apple store. AC ¶ 52. A device remanded into Apple's custody does not need a warranty plan, let alone one paid for by a person who no longer has any legal rights to the device. *Id.* ¶¶ 53-54. Even if AppleCare+ is not cancelled upon trade-in as it should be under § 9.3, that failure should be obvious if Apple is continuing to charge for AppleCare+ on a device that it owns. *See id.* ¶¶ 55, 57. Apple has been on notice for years that many AppleCare+ users still received charges after trade-in, but has failed to "provide[] any refunds at all to some Plaintiffs and members of the [putative] Class." *Id.* ¶¶ 56-57. If those allegations are true, and the Court must treat them as such during the motion to dismiss stage, Apple's conduct is unfair because it rewards Apple for misbehavior (*i.e.* the failure to cancel AppleCare+ plans) at the expense of unwitting consumers.

### 3.     **Unlawful Prong**

The unlawful prong prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (quotation omitted). Consumers may "borrow" violations of other laws for purposes of establishing UCL liability. *Id.* As a result, Plaintiffs' UCL claim survives provided one of the remaining claims does as well—the CLRA, unjust enrichment, conversion, violation of California Penal Code § 496—California Courts have allowed UCL claims that "[t]he 'unlawful' practices prohibited by section 17200 are any practices forbidden by law, be it civil or criminal, federal, state or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal.App.4th 832, 838–39 (1994). With the survival of the

conversion and § 496 claims, discussed below, Plaintiffs have sufficiently alleged a claim under the unlawful prong of the UCL.

Accordingly, Apple's motion to dismiss Plaintiffs' UCL claim is DENIED as it relates to prospective relief and GRANTED as it relates to retrospective relief.

### C.    Consumer Legal Remedies Act ("CLRA") (Count III)[7]

The CLRA makes illegal various "unfair methods of competition and unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). Conduct that is "likely to mislead a reasonable consumer" violates the CLRA. *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 680 (2006), *as modified on denial of reh'g* (Jan. 31, 2006) (quoting *Nagel v. Twin Laboratories*, Inc., 109 Cal.App.4th 39, 54 (2003)). Courts are to liberally construe and apply the terms of the CLRA "to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." *Colgan*, 135 Cal.App.4th at 680.

#### 1.    Sufficiency of Notice

The terms of the CLRA require a plaintiff to provide a company with thirty days' notice of specific violations before filing a CLRA claim for damages. Cal. Civ. Code § 1782(a). Federal courts have required "[s]trict adherence to the statute's notice provision . . . to accomplish the [CLRA's] goals of expeditious remediation before litigation." *In re Apple & AT & T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011).[8] On October 2, 2024,

---

[7] Since the UCL and CLRA standing requirements are "essentially identical," *Veera v. Banana Republic, LLC*, 6 Cal.App.5th 907, 916 (2016), and the Court has determined that Plaintiff has standing to bring its UCL claim, Plaintiff also has standing to bring his CLRA claim. *See Acevedo v. Sunnova Energy Corp.*, 738 F. Supp. 3d 1268, 1285 (C.D. Cal. 2024)

[8] This notice requirement does not apply where the action is for injunctive relief. *See* Cal. Civ. Code § 1782(d). Here Plaintiffs request injunctive relief, but also "costs, and attorneys' fees," and "all available damages under Cal. Civ. Code §§ 1780(a) and 1781, including punitive damages." AC ¶ 126.

11

Scott served Apple with a letter outlining alleged CLRA violations. AC ¶ 127; CLRA Letter to Apple, ECF No. 30-8.

The Court acknowledges that Plaintiffs' CLRA letter leaves much to be desired in terms of precision and accuracy. The original letter discussed trade-in of an iPhone 13 (Serial Number C0734YJ097) in approximately May 2023. *See id*. According to the letter, Scott intended to cancel his iPhone 13 AppleCare+ coverage when he traded-in his device, but Apple continued to charge Scott in the months that followed the trade-in. *Id*. The AC tells a different story wherein Frank alleges that he purchased an iPhone 13 in May 2023 and traded-it in in December 2023 for an iPhone 13 Pro (with Serial Number C0734YJ097). AC ¶ 15. In the AC, Frank does not allege that Apple continued to charge him after his trade-in, but instead alleges he is entitled to the value for the prorated amount for the 16 days of the month after the trade-in occurred. *Id*.

Notwithstanding the letter's deficiencies, the Court finds Plaintiffs' letter satisfies the pre-filing notice requirement because it alleges violations of specific subsections of the CLRA. *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 1001-02 (N.D. Cal. 2007) (rejecting "assertion that the notice failed to describe the alleged violations with the requisite specificity" when purpose of giving defendant "sufficient notice of alleged defects to permit appropriate corrections" had been met). Frank alleges in the letter (1) that Apple uses particular business practices prohibited under the CLRA, (2) that he experienced specific harm due to these practices, and (3) that he was entitled to certain corrections and remedies to cure this injury. All together, the content of the letter suffices to provide Apple with notice of the alleged CLRA violations. *In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1178-79 (S.D. Cal. 2010).

Apple's insistence that the discrepancies sink the efficacy of Scott's letter is unavailing. Frank notified Apple "of the particular alleged violations" of Section 1770 that ultimately became the basis for the class action complaint. Though the details are wrong, the substance of the conduct alleged in the letter is no different than the conduct alleged in the AC, putting Apple on notice that Scott might bring a CLRA claim if Apple failed to remedy its unlawful business practices.

### 2. Plaintiffs' CLRA Claims Sound-in-Fraud

Plaintiffs specifically allege that Apple engaged in the following unlawful business practices: "[r]epresenting that a transaction confer[ed] or involve[ed] rights, remedies, or obligations that it d[id] not have or involve, or that are prohibited by law," Cal. Civ. Code § 1770(a)(14) ("subsection 14"), and "[i]nserting an unconscionable provision in the contract," Cal. Civ. Code § 1770(a)(19) ("subsection 19"). *See* AC ¶ 119-120. Apple argues that the AC falls short of alleging that Apple acted in a manner consistent with those business practices. Mot. at 18-20. The Court agrees.

As an initial matter, Plaintiffs' allegations under subsection 14 sound in fraud. *See* AC ¶ 132 ("Apple's conduct constitutes fraud . . . which 'means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant . . .'") (quoting Cal. Civ. Code § 3294(c)(3)). Thus, Rule 9(b) applies and Plaintiffs must provide details concerning the "time, place, and content of representations" made by the defendant. *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Additionally, "California requires a plaintiff suing under the CLRA for misrepresentations in connection with a sale to plead and prove she relied on a material misrepresentation." *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 946 (S.D. Cal. 2007). Plaintiffs fail to plead their claim with the requisite particularity, and they fail entirely to allege reliance. Consequently, Plaintiffs have not stated a CLRA claim on the grounds outlined in § 1770(a)(14). *See* Mot. at 19.

Plaintiff's § 1770(a)(19) claim fares no better. Pursuant to that subsection, Plaintiffs assert that § 9.3 inserts "an unconscionable provision in the contract." AC ¶ 120. Under the facts here, an unconscionable provision would grant Apple the "right to continue charging customers or [to] retain pre-paid benefits under AppleCare+ contracts associated with Covered Devices that Apple knows the consumers no longer own." *Id*. In California, unconscionability requires a two-fold showing of procedural and substantive unconscionability. *Heckman v. Live Nation Ent., Inc.*, 686 F. Supp. 3d 939, 952 (C.D. Cal. 2023), *aff'd*, 120 F.4th 670 (9th Cir. 2024). Specifically,

> [t]he procedural element of unconscionability focuses on two factors: oppression and surprise. "Oppression" arises from an inequality of bargaining power which results in no real negotiation and "an absence

13

of meaningful choice." "Surprise" involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms. The substantive element of unconscionability focuses on the actual terms of the agreement and evaluates whether they create "overly harsh" or "one-sided" results as to "shock the conscience."

*Aron v. U–Haul Co. of California,* 143 Cal.App.4th 796, 808 (2006).

"Substantive unconscionability focuses on the terms of the agreement or provision." *Denham v. Weatherford U.S. L.P.*, No. 223CV04045RGKJCX, 2023 WL 8870538, at *3 (C.D. Cal. Aug. 3, 2023). Looking solely at the terms of the Plan, the Court is hard pressed to find that the language of § 9.3 is so unduly harsh or oppressive that it shocks the conscious. In its simplest terms, the provision provides Apple customers the option to trade-in their devices to, at minimum, Apple, and upon that trade-in cancel the AppleCare+ service tied to that device. Nothing within the provision is so unfair that it is substantively unconscionable, and without substantive unconscionability, Plaintiffs' claims under subsection 19 fail.

Accordingly, the Court GRANTS Apple's motion to dismiss the CLRA claim with leave to amend.[9]

### D.   Unjust Enrichment or Quasi-Contract Claim for Restitution (Count IV)

"[A] quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' rights." *Mosier v. Stonefield Josephson, Inc.,* 815 F.3d 1161, 1172 (9th Cir. 2016) (quoting *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172 (2001)); *see also Turnier v. Bed Bath & Beyond Inc.*, 517 F. Supp. 3d 1132, 1141 (S.D. Cal. 2021) (dismissing unjust enrichment claim where "it appears there was an express contract related to the conduct at issue").

Plaintiffs bring this claim in the alternative to their contract claim, but mere recital of alternative pleading is not enough to sustain a claim for unjust enrichment. As Apple rightly points out, the parties agree that a valid contract exists. Mot. at 20. "Without some suggestion

---

[9] Leave to amend is especially appropriate here because Plaintiffs' arguments on unconscionability were tailored to Apple's motion to dismiss and its reliance on the limitation of liability provision. Opp. at 9-10; s*ee also infra* n.6. Apple subsequently withdrew that argument at the hearing on the motion. Hr'g Tr. at 17:5-6. Plaintiffs should have the opportunity to defend their claims on grounds Apple intends to stand behind.

14

that the governing contract is invalid, [Plaintiffs'] claim for unjust enrichment is subject to dismissal." *RSI Corp. v. Int'l Bus. Machines Corp.*, No. 508CV3414RMW(RS), 2009 WL 605837, at *6 (N.D. Cal. Mar. 9, 2009); *see also Free Range Content, Inc. v. Google Inc.*, No. 14-CV-02329-BLF, 2016 WL 2902332, at *16 (N.D. Cal. May 13, 2016) (dismissing unjust enrichment claim where "parties agree that there is an enforceable contract").

Accordingly, the Court GRANTS Apple's motion to dismiss Plaintiffs' claim for unjust enrichment. Although the Court is skeptical that Plaintiffs could successfully amend this claim, the Court grants leave to amend.

### E.  Conversion (Count V)

Conversion is the wrongful exercise of dominion over the property of another." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010) (internal quotation marks omitted). The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. *Id.* The alleged converter must have assumed control over the property or applied the property to his own use. *Id.* A conversion claim for money is not stated "unless there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment." *Kim v. Westmoore Partners, Inc.*, 201 Cal.App.4th 267, 284 (2011) (citing *McKell v. Wash. Mut., Inc.*, 142 Cal.App.4th 1457, 1491 (2006)).

That said, "[n]ot every failure to deliver property to the rightful owner constitutes a conversion . . . To establish a conversion, it is incumbent upon the plaintiff to show an intention or purpose to convert the goods and to exercise ownership over them, or to prevent the owner from taking possession of the property." *Spates v. Dameron Hosp. Ass'n*, 114 Cal.App.4th 208, 222 (2003) (internal citation and quotation marks omitted). In other words, "conversion can occur when a *willful* failure to return property deprives the owner of possession." *Fearon v. Dep't of Corr.*, 162 Cal.App.3d 1254, 1257 (1984) (emphasis added) (citing *Schroeder v. Auto Driveaway Co.*, 11 Cal. 3d 908, 918 (1974)).

Whether certain types of over- or unlawful charges can constitute conversion is an open question in California. *See Welco Electronics, Inc. v. Mora*, 223 Cal.App.4th 202, 211 (2014) (finding defendant's unauthorized charges to plaintiff's credit card deprived plaintiff of "property rights – i.e., money from the available credit line belonging to plaintiff with the credit card company"); *Worldwide Travel, Inc. v. Travelmate US, Inc.*, No. 14-CV-00155-BAS DHB, 2015 WL 1013704, at *10 (S.D. Cal. Mar. 9, 2015) (finding no conversion where parties' dispute was about the amount and appropriateness of the charges, but plaintiffs had otherwise "authorized Defendants to make monthly charges as payment for Defendants' advertising services").

After reviewing the body of authority on conversion in this district, the Court finds that, on these specific facts, Plaintiffs have successfully alleged a conversion claim. For Amsel and Edwards, at least, the terms of the Plan were crystal clear: by trading-in their devices to an Apple store, they sufficiently "express[ed]" their intent to cancel their Plans. Under the Plan, once these terms are met, the Plan "will be cancelled." Plan § 9.3. When Amsel and Edwards traded-in their iPhones, Apple (or Apple's vendor) gained actual possession of the devices and all associated property interests. AC ¶¶ 50-52. To continue charging Plaintiffs in such circumstances is essentially theft because Plaintiffs lose money and in return receive no possible benefit. *Id.* ¶ 53 ("Because AppleCare+ is an extended warranty and service plan for a specific device, it becomes worthless once a consumer no longer owns the Covered Device.").

The Court is not persuaded that Plaintiffs' initial consent to be charged for AppleCare+ at purchase somehow permits later credit card charges after consent had been rescinded. Plaintiffs consented to automatic renewal only "unless and until cancelled." Plan § 9.3. Apple promised that the AppleCare+ plan "will be cancelled" upon trade-in. *Id.* Consequently, the distinction between whether the trade-in itself constitutes cancellation of the Plan or is merely the manifestation of Plaintiffs' intent to have Apple cancel the Plans is a distinction without a difference. The salient point is that Amsel and Edwards, at least, withdrew their authorization for automatic, monthly charges when they tendered their iPhones to Apple; the very terms of the Plan say as much. At that point, the devices were legally owned by Apple (or Apple's vendor), and they had actual knowledge it was within their possession. AC ¶ 52. Nevertheless, Apple

16

continued to charge Amsel and Edwards for a service on a device they no longer owned. *Id.* ¶¶ 14, 16. There is no plausible reason any individual, who transferred their device into Apple's possession, would consent to continuing to make payment for AppleCare+ on a device that was no longer theirs.

Accordingly, Apple's motion to dismiss Plaintiffs' claim for conversion is DENIED.

### F. Civil Theft, Cal. Penal Code § 496 (Count VI)

"Section 496(a) defines the criminal offense of what is commonly referred to as receiving stolen property, while section 496(c) sets forth a right to special civil remedies where a violation of section 496(a) has occurred." *Switzer v. Wood*, 35 Cal. App. 5th 116, 125-26 (2019), as modified (May 10, 2019). "While section 496(a) covers a spectrum of impermissible activity relating to stolen property, the elements required to show a violation of section 496(a) are simply that (i) property was stolen or obtained in a manner constituting theft, (ii) the defendant knew the property was so stolen or obtained, and (iii) the defendant received or had possession of the stolen property." *Id.*

Recently, the California Supreme Court considered the necessity for criminal intent under the statute. *Siry Inv., L.P. v. Farkhondehpour*, 13 Cal. 5th 333, 361 (2022). It observed that

> not all commercial or consumer disputes alleging that a defendant obtained money or property through fraud, misrepresentation, or breach of a contractual promise will amount to a theft. To prove theft, a plaintiff must establish criminal intent on the part of the defendant beyond "mere proof of nonperformance or actual falsity." This requirement prevents " '[o]rdinary commercial defaults' " from being transformed into a theft. If misrepresentations or unfulfilled promises "are made innocently or inadvertently, they can no more form the basis for a prosecution for obtaining property by false pretenses than can an innocent breach of contract."

*Id.* at 361-62 (quoting *People v. Ashley*, 42 Cal.2d 246, 264 (1954)). In other words, a defendant must have "acted not innocently or inadvertently, but with careful planning and deliberation reflecting the requisite criminal intent." *Id.*

Apple argues that Plaintiffs have failed to allege the requisite criminal intent. Mot. at 24-25. It's true that misrepresentations or unfulfilled promises that "are made innocently or inadvertently . . . can no more form the basis for a prosecution for obtaining property by false

17

pretenses than can an innocent breach of contract." *Id.* (quoting *Ashley*, 42 Cal. 2d at 264). However, Plaintiffs' allegations are more pointed than that; they allege that Apple had actual, real time knowledge that it was charging putative class members for AppleCare+ on devices that Plaintiffs no longer owned and had returned to Apple. AC ¶ 52. Rather than cancelling AppleCare+ as promised upon trade-in, Apple continued to charge Plaintiffs and putative class members for the service, sometimes for years. *See* AC ¶¶ 14-17; *id.* ¶ 56 (excerpting dozens of internet comments from 2020 through 2024 in which individuals alleged that Apple continued to charge them for AppleCare+ after trade-in). Amsel himself alleges that Apple refused to provide a refund when he brought the issue directly to the attention of an Apple Store employee, even though Apple was the party in breach. *Id.* ¶ 16; *cf. May v. Google LLC*, No. 24-CV-01314-BLF, 2024 WL 4681604, at *15 (N.D. Cal. Nov. 4, 2024) ("May does not plead Google deliberately retained May's money as required by Penal Code § 496."). At this stage where the Court must construe the facts in the light most favorable to Plaintiffs, that is enough to allege that Apple had the requisite intent to withhold wrongfully acquired funds sufficient to state a claim under § 496.

Accordingly, Apple's motion to dismiss Plaintiffs' § 496(c) claim is DENIED.

## IV. MOTION TO STAY DISCOVERY

Apple moved to stay discovery while its motion to dismiss was pending. ECF No. 56 at 1. The Court DENIES this request and ORDERS the parties to proceed with discovery.

## V. CONCLUSION

For the reasons stated, the Court GRANTS IN PART AND DENIES IN PART Apple's motion to dismiss. Specifically:

(1) Counts I, V, and VI may go forward as alleged;

(2) Count II may go forward as it relates to prospective relief only; and

(3) Counts III and IV are DISMISSED with leave to amend.

The court also DENIES the motion to stay discovery.

\\

\\

\\

Plaintiffs may file an amended complaint consistent with this Order within 21 days. Plaintiffs shall not add any new claims or parties without leave of court.

**IT IS SO ORDERED.**

Dated: July 31, 2025

Noël Wise
United States District Judge